Phil S. Flemming (#014778)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@robainalaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Anastasia Kolozsy,<br><br>        Plaintiff<br><br>v.<br><br>The Little Circus That Could, LLC,<br><br>        Defendant. | No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Anastasia Kolozsy ("Plaintiff"), by undersigned counsel, for her Complaint against Little Circus That Could, LLC, ("The Little Circus"). ("Defendant") alleges as follows:

**NATURE OF ACTION**

1.      This is an action for: (a) sexual harassment/hostile work environment, (b) breach of contract and covenant of good faith/ fair dealing; and (c) equitable claim of promissory estoppel.

**PARTIES, JURISDICTION AND VENUE**

2.      Plaintiff Ms. Kolozsy is a United States citizen and a citizen and resident of the State of Florida.

3.      Defendant The Little Circus That Could, LLC, is a limited liability company organized under the laws of the State of Florida, with its headquarters located in the State of California. Defendant operates its traveling entertainment business in Arizona, among other places in the United States.

4.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and this Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because Defendant caused the events to occur in Arizona the events which give rise to the claims asserted herein.  The events occurred in Tempe, Arizona.  *See* 28 U.S.C. § 1391(b)(2).

6.     Plaintiff exhausted the administrative remedies, as required by law.  She timely filed with a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue.

7.     This action is timely commenced within ninety-days of Plaintiff's receipt of the Notice of Right to Sue.

## FACTUAL BACKGROUND

8.     Defendant The Little Circus That Could, LLC hired Ms. Kolozsy as its concession manager, beginning in November 2018, for a 40-week period as the Defendant traveled to various entertainment venue locations.

9.     Plaintiff Ms. Kolozsy is experienced in managing traveling concession businesses and has run her own concession business from her home in Florida.

10.    Defendant agreed to pay Plaintiff a commission-based salary for the promised 40 weeks of steady work.

11.    In reliance on Defendant's promise, Plaintiff immediately turned down a number of other work opportunities, such as concessions at the Cherry Blossom Festival in Macon, Georgia, the Atlanta Dogwood Festival, the Inman Park Home Show in Atlanta, Georgia, and several other events in Florida.

12.    Plaintiff Ms. Kolozsy began working for Defendant when it was located at the St. Augustine Amphitheatre in St. Augustine, Florida.

13.    Mr. Venardos, Manager of the Defendant limited liability company, directed and supervised Plaintiff's hours and work as the concession manager.

14.    Mr. Venardos and Alex Petrov, the Tent Master, oversaw the set-up,

equipment and operations at each event site where Defendant performed.

15.   Plaintiff Ms. Kolozsy traveled in her RV, with Defendant, and continued working as concession manager.

16.   Mr. Venardos assigned other employees of Defendant to assist with work at the concessions for Plaintiff, as needed.

17.   Mr. Venardos expressed approval with Plaintiff's job performance and how she managed the concessions.

18.   As is the nature of the traveling circus business, Plaintiff traveled with the show for performances in the areas of Kendall and Riverview, Florida, Buda, Texas, and more.

19.   Defendant The Little Circus That Could, with Plaintiff, traveled for shows in Tempe, Arizona, in April 2019.

20.   On Sunday, April 14, 2019, while working at the Tempe location, Mr. Petrov invited Plaintiff and another employee, Brian Pollock, to join him at the workshop-trailer for a drink after the second show ended.

21.   Plaintiff met Mr. Petrov at the workshop-trailer around 8:00 p.m., and Mr. Pollock joined them after a few minutes, for a few drinks.

22.   Mr. Petrov had too many drinks and began to act inappropriately toward Plaintiff Ms. Kolozsy, including saying she had "a sweet ass."  He also aggressively hugged her.

23.   Mr. Petrov's sex-based statements and actions were unwelcomed, unexpected and rejected by Plaintiff.

24.   When Plaintiff Ms. Kolozsy rejected Mr. Petrov by trying to squirm away from his insistence, he put her in a headlock and proceeded to bite her ear aggressively and in a sexual manner.

25.   Plaintiff sought help from Mr. Pollock who looked as if stunned as she was by Mr. Petrov's conduct.  She mouthed to Mr. Pollock that she wanted to leave now with his help.

3

26. Plaintiff felt pressured, due to Mr. Petrov's superior role to hers in the workplace. was afraid that she might lose her job for rejecting Mr. Petrov's sexual actions.

27. Mr. Petrov aggressively pressed physically against Plaintiff, kissed her neck, touched her leg, and forced a "hug" by pinning her from sideways. Plaintiff pushed him away and was shaking with fear, felt disgust and shame

28. Plaintiff was filled with anxiety and texted Mr. Pollock who was sitting in the same area that she needed to go ("g2g"), to leave the threatening situation. They quickly stood and left, taking a circuitous route through the employees' trailers to Plaintiff's RV just in case Mr. Petrov was watching them.

29. When they approached Plaintiff's RV, Plaintiff was shocked to see Mr. Petrov already standing at her front door.

30. Mr. Petrov opened her unlocked RV and woke another woman who was staying with Plaintiff Ms. Kolozsy.  Mr. Pollock and Plaintiff Ms. Kolozsy followed Mr. Petrov into the RV.

31. Immediately, Mr. Petrov began physically hugging and kissing Plaintiff against her will.  She asked Mr. Pollock to help, and he persuaded Mr. Petrov to leave with him to "find a beer."

32. Plaintiff immediately locked her RV door and turned off all the lights to hide from Mr. Petrov and his severe harassment.

33. Ten minutes later, Mr. Petrov returned to Plaintiff's RV door.  He kept pounding for 10 minutes and tried to pull the locked door open.

34. Plaintiff Ms. Kolozsy was fearful, unable to control the situation and afraid of Mr. Petrov.  Ms. Kolozsy cowered in fear in the darkness of her RV, in panic.

35. Plaintiff Ms. Kolozsy did not know who else to turn to, so she texted Mr. Pollock for help and asked him to come to her house to get Mr. Petrov away from her.

36. Mr. Pollock came to Plaintiff's rescue a third time and persuaded Mr. Petrov to leave with him.

37. More than an hour later, Plaintiff heard Mr. Petrov knocking on her RV door again, trying to force the handle. She sent Mr. Pollock another text and he replied at 11:57 p.m., to tell her that he had pulled Mr. Petrov away from her RV door again. She could not sleep and suffered severe anxiety.

38. The next day, April 15, Plaintiff Ms. Kolozsy saw Mr. Petrov but she took care to keep a far distance, because she was afraid of him. He seemed to ignore her or avoid her.

39. Plaintiff was unsure what to do about the sexual harassment from the Tent Master Mr. Petrov, especially because he was a manager.

40. Ms. Kolozsy feared he might corner her again when she did not have Mr. Pollock or someone nearby to help her, but she also feared losing the job that she needed.

41. Defendant's employees learned about and were talking about what happened between Plaintiff and Mr. Petrov that Sunday evening.

42. Plaintiff knew Mr. Venardos would be aware of Mr. Petrov's several incidents of sexual harassment, because he always kept an ear to know the goings-on around the show. Mr. Petrov, as a manager, had input in evaluating Plaintiff.

43. The next Tuesday, April 23, 2019, Mr. Venardos texted Plaintiff Ms. Kolozsy and asked her to meet him. They met around 9:00 p.m. Mr. Venardos appeared unhappy and announced that he was terminating her.

44. Plaintiff Ms. Kolozsy was stunned. She questioned Mr. Venardos whether her termination was because of Mr. Petrov's harassment, because that was the only incident that had occurred recently.

45. Mr. Venardos said he decided to terminate Plaintiff because he found a married couple to replace her and thought two people would be better to manage the concessions. Yet, Mr. Venardos assured Plaintiff that she had done a good job.

46. Mr. Venardos told Plaintiff she was no longer needed and the decision "was made."

47. Plaintiff Ms. Kolozsy challenged why Mr. Venardos would terminate her,

when she was doing a good job.  She told him it was too much coincidence to fire her a week after Tent Master Mr. Petrov's sexual harassment.

48.     Plaintiff Ms. Kolozsy reminded Mr. Venardos that he had promised 40 weeks of steady work and that she had turned down several other work opportunities. She said it was unfair to fire her when she traveled for the job and now was thousands of miles from home in Florida, after she relied on his promise of 40 weeks work.

49.     Mr. Venardos said she could finish out working a week as concession manager.

50.     Defendant paid her a final check, and she was stranded in Arizona to travel home.

51.     As a result of Defendant's adverse actions, Plaintiff suffered severe fear and emotional distress.

52.     Plaintiff also has suffered from lost income and incurred expenses to relocate earlier than expected and search for replacement work due to Defendant's termination of her employment.

## CLAIM ONE

### Sexual Harassment/Hostile Work Environment

53.     Plaintiff incorporates all prior paragraphs as though fully set forth herein.

54.     Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

55.     The Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-463(B)(1), prohibits discrimination "against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's . . . sex."

56.     Defendant is an employer within the terms of Title VII and the ACRA.

57.     Plaintiff was an employee at relevant times, within the meanings of terms of Title VII and the ACRA.

58.     Defendant's actions, including those of its Mr. Petrov constitute

discrimination on the basis of sex, in violation of Title VII and the ACRA.

59. Defendant and its supervisor Mr. Petrov allowed a hostile work environment to persist at the workplace, that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.

60. Defendant subjected Plaintiff to adverse actions of unwelcome verbal and physical conduct of a sexual nature, sufficiently severe to alter the conditions of employment.

61. The nature of the conduct altered her work conditions, making her fearful of Mr. Petrov, suffering anxiety.

62. The discrimination resulted in her wrongful termination a week later.

63. Plaintiff has suffered damages as a result of the sexual harassment and hostile work environment. Plaintiff has suffered lost wages, expenses, emotional distress, mental anguish and loss of enjoyment of life, for which she seeks remedies to be made whole.

64. Plaintiff seeks the full remedies available under law, including equitable and compensatory relief and recovery of attorneys' fees and costs.

## CLAIM TWO

### Breach of Contract and Covenant of Good Faith/Fair Dealing

65. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

66. The parties entered into a verbal employment contract, in the State of Florida.

67. The parties' employment contract included an implied covenant of good faith and fair dealing

68. Plaintiff performed her obligations under the employment contract.

69. Defendant breached the parties' contract.

70. Defendant also breached the covenant of good faith and fair dealing owed to Plaintiff.

71. Defendant impaired Plaintiff's rights and reasonable expectations under the

parties' employment contract, specifically the promise of 40 weeks of work.

72. As a result of Defendant's breach of the contract and breach of the duty of good faith and fair dealing, Plaintiff has suffered damages and consequential damages.

73. Plaintiff seeks award of attorneys' fees and costs as the prevailing party in a matter arising out of a contract, based upon A.R.S. § 12-341.01.

## CLAIM THREE

### Equitable Claim of Promissory Estoppel

74. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

75. Arizona recognizes equitable claims of promissory estoppel.

76. Defendant, by its manager Mr. Venardos, promised Plaintiff 40 weeks of steady employment as Concession Manager if she performed the job and traveled with the show.

77. Plaintiff reasonably relied upon that promise and, to her detriment, gave up other planned work opportunities to accept Defendant's promise, and suffered damages as a result of her reliance.

78. Plaintiff lost numerous other lucrative employment or concession business opportunities and she faced the lost time and unanticipated expenses of relocating from Arizona back to her home in Florida based on her detrimental reliance upon Defendant's promises.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anastasia Kolozsy prays for judgment against Defendant The Little Circus Could as follows:

A. For an award of damages resulting from Defendant's violation of state and federal laws, to make Plaintiff whole;

B. For an award of damages proven to result from Defendant's breach of contract;

C. For an award of damages proven to result of Defendant's breach of the duty of good faith and fair dealing;

| | | |
|---|---|---|
| D. | For an award of damages proven to result from Plaintiff's detrimental reliance on Defendant's promise; |
| E. | For an award of attorneys' fees and related costs, as the prevailing party, based upon A.R.S. § 12-341.01 and other applicable authority; |
| F. | For an award of prejudgment and post-judgment interest, to the extent allowed by law; |
| G. | For an award of such other relief as the Court may deem just and proper. |

**REQUEST FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims and issues set forth herein.

DATED this 5th day of December 2019.

                            ROBAINA & KRESIN PLLC

                            By    /s/ Phil S. Flemming
                                   Phil S. Flemming
                                   Attorneys for Plaintiff